IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LAMARCUS D. THOMAS, ) | |
| ) | |
| Plaintiff, ) | Case No. 19-cv-1184-RJD |
| ) | |
| vs. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| MARCIA BYRD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Third-Party Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| MICHAEL BUETTNER, ) | |
| ) | |
| Third-Party Defendant. ) | |

## MEMORANDUM AND ORDER

**DALY, Magistrate Judge:**

This matter is before the Court on Third-Party Defendant Michael Buettner's Motion for

Summary Judgment (Doc. 58).  For the reasons set forth below, the Motion is **GRANTED**.

## Background

On March 26, 2016, Charlotte Abuhuzaimah, a letter carrier for the United States Postal Service ("USPS"), was waiting to exit the parking lot of an auto repair shop located off of North 17th Street in Belleville, Illinois while in the midst of her mail route (Deposition of Charlotte Abuhuzaimah, Doc. 59-1 at 2, 4-5).  Abuhuzaimah intended to exit the parking lot and proceed across the street to deliver mail to a gas station (*Id.* at 5).  In order to cross the street, Abuhuzaimah needed to cross three lanes of travel (*Id.*).  While Abuhuzaimah was waiting to exit, Michael Buettner was driving a pick-up truck in the middle lane, and was stopped at a red light (Deposition of Michael Buettner, Doc. 63-1 at 3-4).  After the light turned green and the vehicles in front of him cleared, Buettner used a hand gesture to wave Abuhuzaimah out of the parking lot and onto the road (Doc. 59-1 at 7).

Buettner assumed Abuhuzaimah would make a left-hand turn into the middle lane, and testified he was giving Abuhuzaimah an opportunity to get into his lane (Doc. 63-1 at 5).  Buettner did not check the far-right lane to make sure it was clear of traffic before gesturing to Abuhuzaimah (Doc. 63-1 at 5).  Buettner did not specifically recall seeking blinkers or flashers on Abuhuzaimah's postal vehicle (Doc. 63-1 at 5).  Abuhuzaimah testified she did not have a turn signal on while waiting to enter the street.  In accordance with typical practice while delivering mail, she had her flashers on both sides of the postal vehicle turned on at that time (Doc. 59-1 at 9).

Seeing Buettner's hand gesture, Abuhuzaimah raised her hand to thank him and entered the street (doc. 59-1 at 8).  Abuhuzaimah testified she entered the roadway two to three seconds after Buettner's hand gesture (Doc. 59-1 at 12).  Buettner testified Abuhuzaimah entered the

roadway less than ten seconds after he gestured (Doc. 63-1 at 5). Upon entering the street, Abuhuzaimah did not proceed into Buettner's lane; rather, she crossed Buettner's lane and proceeded into the third lane of traffic resulting in a collision between Plaintiffs' vehicle and Abuhuzaimah's postal vehicle in the far-right lane (Doc. 59-1 at 8). Prior to crossing Buettner's lane and entering the far-right lane of traffic, Abuhuzaimah's view of the far-right lane was obstructed by Buettner's vehicle and other vehicles behind him in the middle lane (Doc. 59-1 at 7).

## Legal Standards

*Summary Judgment*

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

*Negligence*

This matter arises under the Federal Tort Claims Act, 28 U.S.C. § 1346(b).  Because the alleged negligent acts at issue occurred in Illinois, the laws of the State of Illinois apply.  In order to state a cause of action for negligence under Illinois law, the plaintiff must show that: "(1) the defendant owed him a duty of care; (2) the defendant breached that duty; and (3) the breach was the proximate cause of his injuries." *Staples v. Krack Corp.*, 186 F.3d 977, 979 (7th Cir. 1999) (citing *Ward v. Kmart Corp.*, 554 N.E.2d 223, 226 (Ill. 1990)).

## Analysis

The crux of this case is whether a duty may be applied to Buettner relative to his gesturing to Abuhuzaimah.  In determining whether a duty exists, courts consider a number of factors, including: the foreseeability of injury, the likelihood of injury, the magnitude of the burden of guarding against the injury, the consequence of placing that burden on the defendant, and the possible seriousness of the injury.  *Diaz v. Krob*, 264 Ill.App.3d 97, 99 (Ill. App. Ct. 1994).  Under Illinois law, a motorist typically owes no duty to signal or warn another driver as to whether it is safe to proceed.  *Mroz v. Waste Management of Ill., Inc.*, 286 Ill.App.3d 544 (Ill. App. Ct. 1997) (citing *Luna v. Pizzas by Marchelloni*, 279 Ill.App.3d 402 (Ill. App. Ct. 1996)).  However, Illinois courts have recognized that a motorist can voluntarily assume a duty where she gratuitously renders services to another.  *Mroz*, 286 Ill.App.3d at 547 (citation omitted).

Illinois courts have considered the question of duty under circumstances similar to those here and have reached competing conclusions.  In *Diaz v. Krob*, a pedestrian was crossing an intersection when the crosswalk signal began flashing "Don't Walk."  The pedestrian stopped at the median, and a bus driver waved to the pedestrian to continue walking across the street in front of the bus.  The pedestrian was struck by another vehicle as she proceeded across the street.  The

pedestrian sued the bus driver and school district, alleging that, by his gesturing, the driver voluntarily undertook to guide her safely across the street. The court dismissed the action, finding the defendants did not owe the pedestrian a duty. The court found the bus driver's gesture to be merely an act of common courtesy and indicated that such a courtesy should not be "transformed into a tort thereby giving the plaintiff license to proceed across an intersection against a warning light and without taking any precautions of her own." The court remarked that the intersection in question was controlled by a "Don't Walk" signal and the pedestrian chose to ignore it. The court specifically indicated it would not go so far to imply "that a duty would exist if the plaintiff interpreted the bus driver's gesture as something more than an indication that the driver would not move the bus until the plaintiff passed." *Diaz*, 264 Ill.App.3d 97 (Ill. App. Ct. 1994).

In *Luna v. Pizzas by Marchelloni*, 279 Ill.App.3d 402 (Ill. App. Ct. 1996), plaintiff was driving westbound on Route 30. Defendant Luenemann was driving eastbound along Route 30 and was attempting to make a left-hand turn. At the same time, another driver, defendant Jacobson, was stopped at a nearby railroad crossing. Jacobson made eye contact with Luenemann, waved, and signaled to Luenemann to make his turn and indicated it was safe to do so. While turning, Luenemann struck the plaintiff's vehicle that was traveling westbound along Route 30. The court reversed the lower court's decision granting Jacobson's motion to dismiss. In its decision, the appeals court found that Jacobson's purpose in waving was to communicate to Luenemann it was safe to proceed. The court stated that "[p]laintiffs may be able to prove a set of facts establishing that defendants failed to act with due care after voluntarily undertaking to signal Luenemann that it was safe to make a left turn …." The court also referenced its earlier decision in *Diaz*, explaining that *Diaz* does not stand for the broad proposition that signaling drivers, as a matter of course, may never assume a duty to act carefully when voluntarily instructing

Page **5** of **7**

pedestrians or other motorists.  The court remarked that the *Diaz* decision is limited to its facts and found *Diaz* distinguishable insofar as *Diaz* dealt with an adult pedestrian who crossed the street against a "Don't Walk" signal.

Based on the evidence here, the Court finds *Diaz* controlling and, as such, finds Buettner did not undertake any duty in gesturing to Abuhuzaimah, other than allowing her to proceed in front of him.  Buettner's gesture to Abuhuzaimah, like that of the bus driver in *Diaz*, was a mere courtesy.  While Abuhuzaimah "assumed" Buettner was allowing her to cross, there is no indication that he specifically signaled it was safe to do so.  The court in *Luna* specifically found the "waver" not only signaled for the driver to make his turn, but also "indicated it was safe to do so."  *Luna*, 279 Ill.App.3d at 403.  Further, like the pedestrian in *Diaz* who crossed the street despite encountering a "Don't Walk" signal, Abuhuzaimah was required to yield to the right-of-way traffic on 17th street, but she failed to do so.

Moreover, Illinois courts routinely hold that a duty imposed based on a voluntary undertaking is limited to the extent of the undertaking.  *See, e.g., Rhodes v. Illinois Central Gulf R.R.*, 172 Ill.2d 213, 239-40 (Ill. 1996).  In evaluating the same, factors taken into consideration include the intent of the party who allegedly assumed the duty and the extent of the guidance offered.  *Mroz v. Waste Management of Ill., Inc.*, 286 Ill.App.3d 544, 548 (Ill. App. Ct. 1997) (citation omitted).  Here, Buettner testified he intended to give Abuhuzaimah the option to get into his lane, and it never crossed his mind "she would go all the way across" the road.  This supports a finding that Buettner's gesture was a mere courtesy and, like the bus driver in *Diaz*, he only intended for his gesture to convey to Abuhuzaimah that she could proceed into his lane.  There is no indication Buettner provided any guidance to Abuhuzaimah that it was safe to proceed beyond his lane and against the right-of-way.  Finally, the undersigned agrees with the *Diaz* court

in finding that the consequence of placing a legal duty on Buettner weighs heavily in his favor as an adult motorist should be held responsible for deciding whether gestures and directions given by another motorist can be safely followed.  *See Diaz*, 264 Ill.App.3d at 100.

## Conclusion

Based on the foregoing, Third-Party Defendant Michael Buettner's Motion for Summary Judgment (Doc. 58) is **GRANTED**.  The Clerk of Court is **DIRECTED** to enter judgment in favor of Michael Buettner and against the United States of America at the close of this case.

**IT IS SO ORDERED.**

**DATED: October 18, 2021**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**